528 A.2d 1318

Carlene S. SUTLIFF, Appellant,

v.

Gregory L. SUTLIFF and Fred K. Collins, Appellees.

Carlene S. SUTLIFF, Appellee,

v.

Gregory L. SUTLIFF and Fred K. Collins, Appellants.

COMMONWEALTH ex rel. Carlene S. SUTLIFF, Appellee,

v.

Gregory L. SUTLIFF, Appellant. (Two Cases)

Supreme Court of Pennsylvania.

Argued May 16, 1986.

Decided July 9, 1987.

Reargument Denied Oct. 7, 1987.

394

396

Bonnie D. Menaker, Harrisburg, for Gregory Sutliff and Fred Collins.

Ronald M. Katzman, Arthur L. Goldberg, Harrisburg, for Carlene Sutliff.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

HUTCHINSON, Justice.[*]

These consolidated appeals by allowance arise out of a support action for minors begun in Cumberland County Common Pleas and a subsequent action to remove and surcharge the custodians of the minors' funds after the custodians had applied the minors' funds to discharge the support obligation of one of the custodians.

■ The issues presented for our review concern the use of property given under the Pennsylvania Uniform Gifts to Minors Act (UGMA), 20 Pa.C.S. §§ 5301–10, specifically, whether such funds should be considered by the court in fashioning a support order and whether they may be used to fulfill a parent's support obligation. A threshold issue here is whether Common Pleas had jurisdiction to modify support orders which were on appeal to allow credit for the custodial distributions. Since the modification involved the

[*] This case was reassigned to the writer.

issue on appeal, we hold it did not.[1] On the merits,[2] we hold
that a parent's obligation to support minor children is
independent of the minor's assets. UGMA funds may not
be used to fulfill the parent's support obligation where the
parent has sufficient means to discharge it himself. Upon
determining that the parent has sufficient funds to reason-
ably support the minor without seriously depriving himself
or other persons to whom he has a similar obligation, the
court should not thereafter consider the minor's funds in
setting the support obligation. This is not to say that a
custodian cannot, as a fiduciary, exercise his statutory
discretion in certain circumstances to distribute custodial
funds for a minor's support in addition to those due from
the parent. However, where the parent is also custodian,
his dual obligation comes into conflict. In such case, he
may not credit his custodial distribution against his support
obligation. In the event of a dispute over the extent of his
parental obligation, the parent custodian is removable at
Common Pleas' discretion on petition by or on behalf of the
child.

Gregory L. Sutliff (father) and Carlene S. Sutliff (mother)
were married in 1960; they had four children. At the time
of the couple's separation in 1981 only the three youngest,
Kimberly, Julia and Laura, were minors. The father owns
and operates a successful car dealership in the Harrisburg
area. His net worth is approximately $3,000,000 and he
earns in excess of $130,000 per year. The mother is an

1. Common Pleas did have jurisdiction to consider a modification of
the order based on changed circumstances, here the enrollment of one
child in college and consequent removal from the mother's household.
On the merits of this issue *see* op. at 401–403, *infra.*

2. Carlene Sutliff has filed an application to quash the cross-appeals we
granted Gregory Sutliff from the trial court's modified order at 79 and
80 M.D. Appeal Docket, 1985. The application is based on an agree-
ment the parties made while these cases were pending in Superior
Court and was the subject of a similar motion which that court
denied. Because Common Pleas' treatment of the support issue and
the availability of custodial funds to meet it has become inextricably
intertwined, we believe Superior Court acted properly in refusing the
application to quash. We have entered a separate order denying the
application made in this Court.

emergency room physician. She works part time and earns $26,000 per year. She claims that she cannot work full time because that would prevent her from properly raising the children.

The father and his parents gave substantial assets to the children under the UGMA. The children's aggregate accounts contained cash, stocks and bonds worth over $466,-000. These assets were divided equally among the children. Father is the custodian of those assets given by his parents; Fred K. Collins, the father's business associate, is custodian of those assets given by the father.

In November, 1981 the mother filed a petition for support for herself and the three minor children. An interim support order providing $400.00 per week exclusively for the support of the minor children was entered against the father. Collins and he used the UGMA funds to fulfill up to 75% of the support obligation.

The mother then filed a suit alleging misuse of the children's custodial funds by the father and Collins. She sought a full accounting and their removal as custodians. She also sought to surcharge the custodians for any UGMA funds spent to discharge the father's support obligation.

Cumberland County Common Pleas, Orphans' Court Division, held that the custodians could use the children's UGMA funds to fulfill the father's support obligation to the children. The court relied on statutory language which gives the custodian broad discretion in expending UGMA funds.

§ 5305. Duties and powers of custodian

. . . . .

(b) The custodian shall pay over to the minor for expenditure by him or expend for the minor's benefit so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor, in the manner, at the time or times, and to the extent that the custodian, in his discretion, deems suitable and proper, with or without court

order, with or without regard to the duty of himself or of any other person to support the minor, or his ability to do so, and with or without regard to any other income or property of the minor, which may be applicable or available for any such purpose.

20 Pa.C.S. § 5305(b). The court did not limit the amount of custodial funds that the father and Collins could use to discharge the father's support obligation. Mother appealed this order.

Subsequently, Common Pleas entered a final support order which required the father to pay $600.00 per week for support of the minor children.[3] In reaching its decision on support, the court considered, among other factors, the assets and income of the father and the mother, housing expense and prior standard of living. The court stated that it had previously resolved the issue of the availability of the children's UGMA assets to fulfill the father's child support obligation. It stated that "[t]here is no doubt that [father] can reasonably pay this support order," but did not restrict or limit the father's use of UGMA funds to fulfill his support obligation.

Both parties appealed the final support order to Superior Court. The mother claimed that Common Pleas improperly permitted father to satisfy his support obligations from custodial funds. In addition, she argued that the father and Collins, his business associate, should be removed as custodians and surcharged for their improper use of the UGMA funds. The father appealed the support order, claiming that he should not be required to support children who have substantial assets of their own.

While the appeal was pending, the father filed a petition to modify the support order with respect to his eldest daughter, Kimberly, who had recently entered college. Common Pleas modified the order to allow him to pay her college expenses from UGMA funds. Child support payable to the mother was also reduced by $200.00 per week during

3. The order also required the father to pay $300.00 per week for the support of mother.

the school year to account for the girl's absence from home. The mother appealed this modification to Superior Court as well. She claimed that Common Pleas lacked jurisdiction to conduct any additional proceedings concerning the order because it had been appealed. All appeals were consolidated.

Superior Court held that a court generally may not consider the UGMA assets of a minor child when fashioning a support order, and a custodian may not use these assets to fulfill a parent's support obligation. The court, however, distinguished between children under eighteen years of age and those over eighteen.[4] It held that a court may consider the UGMA funds of college age children when apportioning college expenses. The court refused to remove the custodians, order an accounting or surcharge the father and Collins because the law establishing custodians' duties and responsibilities was not defined prior to this case. Superior Court, relying on Pa.R.A.P. 1701, also held that Common Pleas lacked jurisdiction to entertain a petition to modify the final support order while the case was on appeal to Superior Court.

[2] We will address the jurisdictional question first. Rule 1701 states in relevant part:

Rule 1701. Effect of Appeal Generally

(a) General rule. Except as otherwise prescribed by these rules, after an appeal is taken ..., the trial court ... may no longer proceed further in the matter.

. . . .

(c) Limited to matters in dispute. Where only a particular item, claim or assessment adjudged in the matter is

---

**4.** Superior Court, relying on Pa.R.C.P. 76, incorrectly defined the age of majority as eighteen. The age of majority for substantive purposes in civil matters remains twenty-one. 1 Pa.C.S. § 1991; *In re Pincus Estate*, 378 Pa. 102, 105 A.2d 82 (1954). However, 23 Pa.C.S. § 4321, enacted in October, 1985, distinguishes between children eighteen years of age and younger and children older than eighteen for purposes of support. We do not believe that 23 Pa.C.S. § 4321 is a departure from the established law of the Commonwealth discussed *infra*. Since the statute was passed after these proceedings began, we will not discuss it further.

> involved in an appeal, ... the appeal ... shall operate to prevent the trial court ... from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court ... or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

The appeal included the issues of whether UGMA funds should be considered by the court when fashioning a support order, and whether the husband may fulfill his support obligation with them. The modification also dealt with the expenditure of UGMA funds for the support of the children. It was on this issue that Common Pleas entered its modification. This was improper; the court lacked jurisdiction because those questions were pending above. Had the modification dealt merely with a change in support because of changed circumstances arising out of one child's attendance at college and not been related to the expenditure of UGMA funds, Rule 1701 would not have divested the court of jurisdiction. Therefore, we affirm Superior Court on this point and proceed to a consideration of the merits.

 The purpose of child support is to promote the best interest of the child; the associated legal obligation of parents is to provide for the reasonable expenses of raising the child. *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). Indeed, parents have a duty to support their minor children even if it causes them some hardship. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974). The cost of raising children is a function of several factors including custom, the children's needs and the parents' financial status. *Melzer v. Witsberger,* 505 Pa. at 471, 480 A.2d at 995. It is intended to provide for more than bare necessities. *Id.,* 505 Pa. at 471, 480 A.2d 996. Superior Court has consistently held that a parent's support duty is not affected by a minor child's own means or earning potential. *Commonwealth ex rel. Byrne v. Byrne,* 212 Pa.Superior Ct. 566, 243 A.2d 196 (1968); *Commonwealth v. Trimble,* 197 Pa.Superior Ct. 644, 180 A.2d 92 (1962); *Commonwealth ex rel. Firestone v. Firestone,* 158 Pa.Superior Ct. 579, 45 A.2d 923 (1946).

However, the earnings of older, college age children may be considered in certain circumstances. *Commonwealth ex rel. Platt v. Platt,* 227 Pa.Superior Ct. 423, 323 A.2d 29 (1974). *See also Commonwealth ex rel. Cann v. Cann,* 274 Pa.Superior Ct. 274, 418 A.2d 403 (1980). Funds placed in trust for the benefit of a child or for support or education may also be considered when calculating support in certain circumstances. *Commonwealth ex rel. Goichman v. Goichman,* 226 Pa.Superior Ct. 311, 316 A.2d 653 (1973); *Doelp v. Doelp,* 219 Pa.Superior Ct. 420, 281 A.2d 721 (1971).

The father cites *Doelp* to support his view that funds given to the children under the Pennsylvania Uniform Gifts to Minors Act may be used to fulfill his support obligations and that he and his business associate have properly performed their statutory duty as custodians of the UGMA assets. This analysis overlooks critical distinctions between *Doelp* and the instant case. In *Doelp,* the father's ability to fulfill his financial obligation was in doubt and the lower court did not allow into the record any evidence about the trust. In addition, the order was contested only as to one child, an eighteen year old college student. Out of cases following *Doelp,* Superior Court has evolved a rule that a court calculating child support may take a child's trust assets and income into account if the father's ability to pay is in doubt or the trust was specifically established for the support or education of the beneficiary-children. *Commonwealth ex rel. Schlesinger v. Schlesinger,* 231 Pa.Superior Ct. 284, 331 A.2d 694 (1974); *Doelp v. Doelp, supra.*

The purpose of the UGMA is to provide an inexpensive, easy mechanism for giving property to minors. Before passage of the UGMA, a trust or guardianship was required. These methods were unwieldy, raised federal tax problems and were often prohibitively expensive for all but large gifts. The UGMA seeks to solve the problem of administrative expense and complexity while preserving certain federal tax benefits for the donor. Uniform Gifts to Minors Act, Prefatory Note, 8A U.L.A. 318 (1983). Proper-

ty transferred under UGMA is owned by the donee-minor; the minor is vested with full and indefeasible title. 20 Pa.C.S. § 5304. A custodian holds, manages, invests and dispenses the property during the child's minority, 20 Pa. C.S. § 5305(a), but must deliver the property and proceeds, plus accumulated interest and profit, to the minor when he reaches the age of twenty-one.[5] 20 Pa.C.S. § 5305(d). Unlike a trust for support or education, the proceeds of which must be used for the stated purpose, the UGMA property and proceeds may generally be used by custodians for the child's support. It is, however, the custodian's duty to use the property for the child's benefit. 20 Pa.C.S. § 5305(b). We have stated that a custodian may not use UGMA property to benefit himself, *Schwartz Estate,* 449 Pa. 112, 117, 295 A.2d 600, 603 (1972) (Opinion Announcing the Judgment of the Court), and suggested that a custodian may not use it to fulfill an existing support obligation. *Id.,* 449 Pa. at 115 n. 2, 295 A.2d at 603 n. 2.

The minor-custodian relationship under UGMA involves at a minimum the fiduciary obligation of an agent. The custodian is expected to use the property for the minor's benefit and act in the minor's interest. 20 Pa.C.S. § 5304. An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit. Restatement (Second) of Agency § 387 (1958); *Sylvester v. Beck,* 406 Pa. 607, 178 A.2d 755 (1962). A custodian under UGMA should be held to a no less rigorous standard. Indeed, a custodian's duties may be more properly analogous to those of a trustee with the broadest possible discretionary powers. A trustee owes a fiduciary duty to the beneficiary. Restatement (Second) of Trusts § 170 (1959); *Holmes Trust,* 392 Pa. 17, 139 A.2d 548 (1958). He violates that duty when he has a personal interest in trust dealings that might affect his judgment. Restatement (Second) of Trusts § 170, comments b, c (1959);

---

**5.** This also distinguishes a minor given assets under UGMA from a trust beneficiary. Though a beneficiary of a trust enjoys the fruits of the corpus, he may or may not eventually own it; a beneficiary does not have title to the corpus. The minor actually owns the property.

*Banes Estate,* 452 Pa. 388, 305 A.2d 723 (1973), *appeal after remand,* 461 Pa. 203, 336 A.2d 248 (1975).

 Were we to permit unrestrained credit against child support for these custodians' distributions, the father's action as custodian would be self-serving and Collins's would benefit the father, not the children. When he can "reasonably" do so, the father is obliged to provide support for his minor children regardless of the UGMA property. *Conway, supra.* Whether it is reasonable to require a father to supply all or part of the support his children require without regard to their own means is a threshold question. It involves balancing the parent's income, assets, earning power and needs against the children's needs. If the court determines that the parent can reasonably provide for their needs at an appropriate level, that obligation is paramount and the children's means should not be considered. The inquiry should thereafter deal only with the children's reasonable requirements, with a possible exception for children seeking higher education. *See* op. at 405–408, *infra.* If, however, the parent's assets are not adequate, the court should state, on the record, both the children's total needs and the parent's reasonable contribution. Common Pleas' failure to separate the issue of father's reasonable obligation from the children's needs has led to much of the confusion in this case.

 On this record, it is plain that father and his business associate exercised their powers as custodians of the children's UGMA property to fulfill some part of the father's support obligation out of the children's assets. To the extent that this expenditure of the children's assets relieved the father from his "reasonable" support obligation, it is, we believe, a breach of duty of loyalty by the father, discussed *supra,* and brings into question Collins's good faith in exercising his custodial discretion. We also believe that these facts present a conflict of interest which would require the custodians' removal. A support order must state the amount for which the father is personally responsible and must pay from his own funds. The order

Common Pleas entered here does not and, on its face, permits the custodians to satisfy it wholly from the children's assets until they are exhausted. This is wrong.

■ Even if a parent lacks the resources to fully provide for his children's needs, no court should grant him or her the unbridled right to pay as much of the children's support from UGMA funds as he or she sees fit. This would be akin to removing the parent's support obligation to the extent the children have assets and is contrary to law. *See* op. at 402, *supra*, and cases cited therein. Child support is a parent's personal obligation and must be paid by him. If the parties cannot agree, the court must determine the amount which the parent should pay from his own assets. Any additional sums required for support in excess of the support order can be paid by the UGMA custodian. Where the parent lacks the means to fully meet his children's needs, the court may specify the excess sum needed and order the custodian to pay it as a minimum. Otherwise, additional payment should be left to the custodian's good faith discretion. If the court fails to do so, an uncertain custodian may ask the court to specify a minimum sum to be paid from custodial assets. In cases involving a conflict of interest, the court may consider removal of the custodian. *See* op. at 397, 406.

Under this analysis, UGMA property, like other assets, can be used for the children's needs if the father could not or would not fulfill his support obligation. The parent's obligation remains paramount.

As discussed earlier, Superior Court has held in similar contexts that a judge fashioning a support order may consider a child's assets and income if the parent's resources are lacking. UGMA funds should also be considered in those circumstances. Such an expenditure would save the child from need or destitution and clearly would be in the child's interest. However, that is not the case here. There is no evidence on this record that the father cannot fulfill the support order from his own resources. To the contrary, Common Pleas states that he can. There is also

no indication that he would permit his children to suffer serious deprivation pending judicial resolution of the support question. If a parent did refuse to fulfill his support obligation, a custodian acting in good faith could make interim expenditures for the children's necessary support. Thereafter, he could seek to recover any distributions he made on behalf of the children from the responsible parent and in doing so should be protected against any other personal responsibility.

 Although a parent has an absolute duty to support his or her minor children, this support obligation does not always extend to financing a college education. *Emrick v. Emrick*, 445 Pa. 428, 284 A.2d 682 (1971); *DeVergilius v. DeVergilius*, 329 Pa.Superior Ct. 434, 478 A.2d 866 (1984). Absent an agreement, a limited duty to provide college education arises only if the child shows a willingness and aptitude to undertake the studies and the parent can provide the necessary funds without hardship to himself. *Emrick v. Emrick, supra; Commonwealth ex rel. Hanerkam v. Hanerkam*, 221 Pa.Superior Ct. 182, 289 A.2d 742 (1972). In this context, courts have held that children's education may be financed from sources other than the parent. *DeVergilius v. DeVergilius, supra* (college student's income, property and trust fund may be considered by the court); *Commonwealth ex rel. Schlesinger v. Schlesinger, supra* (college student daughter's trust fund may be considered by court); *Commonwealth ex rel. Platt v. Platt, supra* (college student daughter's earnings considered by court); *Doelp v. Doelp, supra* (college student son's earnings and trust fund to be considered by the court). There is no reason why this rule should not apply to UGMA funds. It is fair and consistent with the policies underlying both child support and the UGMA. Therefore, a court may more freely consider UGMA assets when apportioning financial responsibility for a child's education. However, there was no finding here that husband's assets are lacking or that provision of a college education would

impose any hardship on him. Indeed, the present record belies any such problem.

A parent-custodian who uses custodial funds to satisfy his own support obligation violates his duty of loyalty and hereafter is subject to surcharge and removal for such violation. It seems to us, however, that automatic removal and surcharge for past acts of the custodians which violate this fiduciary duty of loyalty are inappropriate because it has not heretofore been considered in the context of UGMA. Any custodian, however, who uses UGMA funds to satisfy a parent's support obligation is subject to surcharge and removal if his acts were in bad faith.

In this case, the question of bad faith was not considered by the lower courts. For that reason, the record is inadequate for a decision on that issue.

Accordingly, the record is remanded to the Court of Common Pleas of Cumberland County for such further proceedings as may be necessary to determine the custodians' good faith as well as the question of whether this father has sufficient means to meet his children's needs without using their own property. Otherwise, the order of Superior Court is affirmed.

McDERMOTT, J., concurs in the result and files a Concurring Opinion.

NIX, C.J., files a Concurring and Dissenting Opinion.

LARSEN, J., files a Dissenting Opinion in which FLAHERTY, J., joins.

NIX, Chief Justice, concurring and dissenting.

I agree with the result reached by the majority insofar as it relates to the assets gifted by the children's paternal grandparents. I disagree with respect to the funds which came from the children's father; those funds, in my view, should be applicable to the father's support obligation. Those funds, after all, came from the very person who has the support obligation here in issue.

LARSEN, Justice, dissenting.

I dissent; where the parents are separated and there is an order of support for their children and the children have *sufficient* assets for their support or partial support, the children's assets should be utilized first.

FLAHERTY, J., joins in this dissenting opinion.

McDERMOTT, Justice, concurring.

To the extent that the plurality holds that it was improper for the custodians to use the children's UGMA funds to offset the father's support obligation, I agree.[1] However, because the plurality answers more than asked, I must disagree with other aspects of the opinion.

The opinion begins its analysis with the announcement of a simple and well defined rule: "we hold that a parent's obligation to support minor children is independent of the minor's assets." P. 398. Unfortunately, the plurality proceeds to obfuscate this simple rule by seeking to explain the instances in which a court can take into its consideration the minor's assets in setting a support order.

The primary source of support for children is their parents. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974). Either or both parents must support their offspring until they reach majority. *Costello v. LeNoir,* 462 Pa. 36, 40, 337 A.2d 866, 868 (1975). The obligation of support is independent of the assets of the children. Their assets are only relevant when the parents are unable to meet their responsibility of support, and in those instances where a minor's assets are utilized to offset the failure of the parent to meet his or her obligation, the parents' debt is not extinguished. Here, the parents are able, and no more need be said. Each case for support differs as there are different faces. A recitation that purports to cover all possibilities creates more problems than answers.

The issue here is not whether the father is able to support his children; he is. The issue is rather can a father take

1. I am also in agreement with the plurality's jurisdictional analysis.

back a gift he gave. The answer must be no, unless a father's gift is never a gift. *See generally Semasek v. Semasek,* 509 Pa. 282, 292, 502 A.2d 109, 113 (1985) (McDermott, J., concurring). If one chooses to make a gift to his children, he cannot later take it back by deducting from that patrimony what he owes in support payments.